UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Charles C.,<br><br>            Plaintiff,<br><br>v.<br><br>Kilolo Kijakazi,<br>*Acting Commissioner of Social Security*,<br><br>            Defendant. | Case No. 22-cv-2054 (JWB/DJF)<br><br>**REPORT AND RECOMMENDATION** |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Charles C. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision ("Decision") denying his application for disability insurance benefits for the period from August 24, 2017 to December 31, 2017. This matter is presented for decision on the parties' cross motions for summary judgment. The Court considers the motions pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1. For the reasons below, the Court recommends Plaintiff's Motion for Summary Judgment (ECF No. 18) be granted, the Commissioner's Motion for Summary Judgment (ECF No. 23) be denied, the Decision be vacated, and this matter be remanded to the Commissioner consistent with this Report and Recommendation.

**BACKGROUND**

**I.    Procedural History**

Plaintiff applied for disability insurance benefits under Title II of the Social Security Act ("DIB") on November 11, 2020, alleging disability onset as of August 24, 2017. (Soc. Sec. Admin.

R. (hereinafter "R.") 217, 220-226.)[1] Plaintiff identified bilateral shoulder pain, neck pain, back pain, depression, anxiety, tinnitus, headaches, plantar fascial thrombosis, sleep apnea, and abdominal pain as disabling conditions. (R. 239.) At the time of his application, Plaintiff was 56 years old (R. 220), had a high school education (R. 240), and identified past work experience as a distributor and marketing/sales consultant (R. 240).

The Commissioner denied Plaintiff's application initially (R. 118-122) and on reconsideration (R. 131-134). At Plaintiff's request (R. 135), an Administrative Law Judge ("ALJ") held a telephonic hearing on September 2, 2021 (R. 45-82), during which Plaintiff participated with his attorney. Plaintiff and a vocational expert testified (R. 45-46). The ALJ issued a written decision on October 28, 2021, finding Plaintiff not disabled and denying his claim for benefits during the period between August 24, 2017 and December 31, 2017, Plaintiff's date of last insurance ("DLI"). (R. 10-26.) On June 24, 2022, the Social Security Administration Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. 1- 3.) Plaintiff filed this action on August 22, 2022. (ECF No. 1.)

Plaintiff argues the ALJ erred as a matter of law by failing to account for Plaintiff's non-severe mental impairments in her assessment of Plaintiff's residual functional capacity ("RFC")[2] (ECF Nos. 20 at 5-13; 25 at 1-6). Plaintiff asks the Court to vacate the Decision and remand the case for further proceedings before the Commissioner. (ECF No. 20 at 14; ECF No. 25 at 6.) The Commissioner asks the Court to affirm the Decision on the grounds that the ALJ's RFC

---

[1] The Social Security administrative record (R.) is filed at ECF No. 16. For convenience and ease of use, the Court cites to the record's pagination rather than the Court's ECF number and page.

[2] RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

determination is appropriate, and that substantial evidence supports the ALJ's findings. (*See generally* ECF No. 24.)

**II.     Record Evidence**

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties. The Court summarizes the facts of record here only to the extent helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

The crux of Plaintiff's argument is that the ALJ failed to properly consider his mental impairment in reaching her Decision. Plaintiff was diagnosed with adjustment disorder with anxious mood in September 2016. (R. 1195.) The ALJ found Plaintiff's mental impairment was non-severe. Plaintiff does not dispute that finding but contends the ALJ failed to properly consider or include any functional limitations related to Plaintiff's mental impairment in determining Plaintiff's RFC. (*See* ECF Nos. 20, 24.) The Social Security Administration directs that four areas be assessed to evaluate how mental disorders limit functioning in a work setting: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.A.2.b. The record evidence summarized below discusses the extent to which Plaintiff's non-severe adjustment disorder affected Plaintiff's ability to function in each of these four areas. (R. 14- 15.)

       1.     **Understanding, Remembering or Applying Information**

In his Function Report, Plaintiff reported he was able to follow written instructions "fairly well." (R. 263.) Plaintiff also reported he could pay bills, count change, handle a savings account, and use a checkbook or money order. (R. 261.) Plaintiff further shared that he used a pill organizer

and set reminders on his phone to help him remember to take medication. (R. 260.) On September 13, 2017, a neurologist evaluated Plaintiff's memory as normal. (R. 1293.) Plaintiff also regularly exhibited logical thought processes. (*See, e.g.*, R. 1061, 1091, 1167.) In reviewing Plaintiff's initial application, Dr. Ann Lovko determined Plaintiff had no functional limitation in understanding, remembering or applying information. (R. 92.) Dr. Kathleen Feil agreed with her assessment at the reconsideration level. (R. 107.)

### 2. Interacting with Others

In his Function Report, Plaintiff reported he had not lost a job because of problems getting along with others, and that he did not have issues getting along with authority figures. (R. 264.) Plaintiff also reported he self-isolated and rarely socialized. (R. 263.) Notes from Plaintiff's therapy sessions reflect that he maintained appropriate eye contact with his therapist, and do not indicate any abnormal behaviors or interactions during the sessions. (*See, e.g.*, 1061, 1091, 1127, 1159.) Dr. Lovko at the initial level, and Dr. Feil at the reconsideration level, determined Plaintiff had a mild functional limitation in interacting with others. (R. 92, 107.) Dr. Feil also noted Plaintiff had "difficulty getting along with others." (R. 108.)

### 3. Concentrating, Persisting, or Maintaining Pace

In his Function Report, Plaintiff reported he could pay attention for 15 minutes and that he does not finish what he starts. (R. 263.) Plaintiff also reported he read every day and watched television most days. (R. 262.) On September 13, 2017, a neurologist evaluated Plaintiff's attention as normal. (R. 1293.) Plaintiff also regularly exhibited logical thought processes. (*See, e.g.*, R. 1061, 1091, 1167.) Dr. Lovko at the initial level, and Dr. Feil at the reconsideration level, determined Plaintiff had a mild functional limitation in concentrating, persisting, or maintaining pace. (R. 92, 107.)

### 4. Adapting or Managing Oneself

In his Function Report, Plaintiff reported he had multiple panic attacks each week. (R. 264.) Plaintiff also reported he was comfortable with changes in routine, he was able to drive and go out alone, and he did not need reminders to take care of personal needs and grooming. (R. 260- 261.) The record does not reflect evidence of panic attacks during the period under review. Dr. Lovko at the initial level, and Dr. Feil at the reconsideration level, determined Plaintiff had no functional limitation in adapting or managing oneself. (R. 92, 107.)

## III. Administrative Hearing

During his hearing on September 2, 2021, Plaintiff testified that he previously owned two distribution companies through which he was self-employed. (R. 54.) Plaintiff explained that he also served as Vice President of Sales in one of his companies after selling it, and subsequently worked as a consultant for other firms. (R. 55-56.) Plaintiff described various physical limitations he had resulting from a car accident (R. 61-65), but said he did not believe he had any mental limitations in his ability to work during the period under review (R. 59).

After Plaintiff testified, vocational expert Frank Samlaska categorized Plaintiff's past work as follows:

(1) a distributor (Dictionary of Occupational Titles ("DOT") 163.267-010, light as generally performed and medium as performed by Plaintiff, skilled work at Specific Vocational Preparation level (SVP) 6); and

(2) composite jobs consisting of consisting of:

(a) vice president of sales/sales manager (DOT 163.167- 018, sedentary as generally performed and medium as performed Plaintiff, skilled work at SVP 8) and general merchandise sales (DOT 279.357-014, light as generally performed and medium as performed by Plaintiff,

5

skilled work at SVP 5); and

      (b) distributor/consultant (DOT 189.117-010, light as generally performed and medium as performed by Plaintiff, skilled work at SVP 8).

(R. 24, 67-69, 336.)

The ALJ posed the following hypothetical questions to Mr. Samlaska:

Hypothetical 1:

If you could assume a hypothetical person of the same age, education, and work experience as the claimant, who could perform light work as defined in the regulations. He could occasionally push and pull within the weight parameters of light work with his right upper extremity. He could never climb ladders, ropes and scaffolds. He could frequently climb ramps and stairs. He could frequently stoop, kneel, and crouch. He could occasionally crawl. He could occasionally reach overhead with his right upper extremity. He could frequently reach in all other directions bilaterally, including overhead on the left. So the only other further limitations would be overhead on the right. Does that make sense? Otherwise, reaching would be limited to frequent bilaterally. He should not work at unprotected heights or have operational control of moving, dangerous, or vibrating machinery. Would such an individual be able to perform any of that past work?

Hypothetical 2:

If you could please assume the same individual with the same limitations as in Hypothetical 1. This individual could reach overhead occasionally, bilaterally, frequently reach in all other directions, and could frequently handle and finger. Would any of that past work be available?

Hypothetical 3:

If you could please assume the same individual with the same limitations as in Hypothetical 2, but this individual would be limited to an environment with a moderate level of noise. Would any of that past work be available?

(R. 69-71.) Mr. Samlaska responded that the hypothetical person could perform Plaintiff's past work at a sedentary/light level, as well as other light, unskilled work that existed in significant numbers in the national economy under each scenario. (R. 70-72.) The light, unskilled positions included Collector Operator, Ticket Taker, and Router Clerk. (R. 70.) The ALJ then posed two

6

additional hypothetical questions to Mr. Samlaska:

> Hypothetical 4
>
> Now, for Hypothetical 4 … but this individual could only occasionally move their head side to side – yeah, so that's the limitation.
>
> Hypothetical 5
>
> For Hypothetical 5, if I were to additionally add that this individual would be limited to carrying out simple, routine instructions, I presume those three jobs would still be available; is that correct?

(R. 72.) Mr. Samlaska testified that under both Hypotheticals 4 and 5, a person could not perform Plaintiff's past relevant work, but could still perform work in the three other light, unskilled positions. The ALJ then asked Mr. Samlaska:

> Now if I were to return you to Hypothetical 3, so before I added the neck movement and the mental restriction, but add that this person would be limited to sedentary work, and he could occasionally push and pull within the weight parameters of sedentary work—let's see. And I believe that was with his right upper extremity … He could occasionally climb ramps and stairs. He should not be required to balance as defined in the SCO, DOT. He could occasionally stoop, kneel, crouch, and crawl. Would any of the past work be available for such an individual?

(R. 72-73.) Mr. Samlaska responded that the hypothetical person could perform Plaintiff's past work as a sales manager only, per the DOT, but if that hypothetical person also had a neck movement limitation, the hypothetical person would be unable to perform Plaintiff's past work as a sales manager. (R. 73.) The ALJ and Mr. Samlaska then had the following exchange:

> **ALJ**: Has the claimant acquired skills that would transfer to occupations within that residual functional capacity with the neck restriction?
>
> **Mr. Samlaska**: No.
>
> **ALJ**: All right. And obviously, it would be knocked out with the limitation to carrying out simple routine instructions and tasks, correct?
>
> **Mr. Samlaska**: Correct.
>
> **ALJ**: And given that mental limitation, no transferable skills, correct?

7

**Mr. Samlaska**: Correct.

(R. 73-74.)

## IV. The ALJ's Written Decision

The ALJ issued a written decision on October 28, 2021 finding Plaintiff not disabled. (R. 10–26.) Pursuant to the five-step sequential analysis outlined at 20 C.F.R. §§ 404.1520(a), and 416.920(a),[3] the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset date of his disability; (2) (a) suffered from the following impairments that, at least in combination, were severe: degenerative disc disease of the cervical spine; and mild degenerative joint disease of the shoulder status post clavicle excision on the right; and (b) suffered from the following non-severe impairments: adjustment disorder with anxious mood; sleep apnea; obesity; hyperlipidemia; gout; GERD; dry eyes; retinal changes from diabetes; and allergic conjunctivitis; (3) did not have a listed impairment or a combination of impairments that met or medically equaled a listed impairment as defined in 20 C.F.R. Part 404, Subpart P, Appendix I ("Listing of Impairments" or "Listing")[4]; (4) was able to perform his past relevant work as a distributor, as generally performed, with the functional capacity (RFC) to:

> to perform light work as defined in 20 CFR 404.1567(b) except he could occasionally push and pull within the weight parameters of light work with his right upper extremity. He could never climb ladders, ropes, or scaffolds. He could frequently climb ramps and stairs. He could frequently stoop, kneel, and crouch. He could occasionally crawl. The claimant could occasionally reach overhead with his right upper extremity. He could frequently reach in all other directions

---

[3] The five steps are: (1) whether the claimant was engaged in substantial gainful work activity; (2) the medical severity of the claimant's impairments; (3) whether one or more impairments meets or medically equals the criteria of a listed impairment, and meets the duration requirement; (4) the claimant's RFC and whether he could perform past relevant work; and (5) the claimant's RFC and whether he could make an adjustment to other work. 20 C.F.R. § 416.920(a)(4)(i)–(v).

[4] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" impacted. *See* 20 C.F.R Part 404, Subpart P, App. 1.

8

bilaterally, including overhead on the left. He should not work at unprotected heights or have the operational control of moving, dangerous, or vibrating machinery.

and (5) in the alternative to his past relevant work as a distributor, was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (R. 13-25.) Based on these findings the ALJ concluded Plaintiff was not disabled. (R. 25-26.)

At step two of the sequential analysis, in rating the severity of Plaintiff's mental impairment, the ALJ considered each of the four above-described broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders (20 CFR, Part 404, Subpart P, Appendix 1)." (R. 14.) The criteria are rated using a five-point scale of none, mild, moderate, marked, and extreme. *See id.* § 404.1520a(c)(4).

The ALJ found as follows:

The first functional area is understanding, remembering or applying information. In this area, the claimant had *no limitation*. He stated that he did "fairly well" following written instructions (Exhibit 4E). The claimant reported that he was able to pay bills, count change, handle a savings account, and use a checkbook or money order. He also reported that he needed to use a pill organizer for his medications. The claimant had normal memory during an evaluation on September 13, 2017 (Exhibit 3F/910). He had generally logical thought processes (Exhibit 9F/708, 744, 776, 785, 793, 795, 811, 813).

The next functional area is interacting with others. In this area, the claimant had *mild limitation.* He reported that he has not lost a job because of problems getting along with others, and that he has not had issues getting along with authority figures (Exhibit 4E). He stated that he self isolates and that he rarely socialized. The claimant maintained appropriate eye contact during therapy sessions (Exhibit 9F/708, 744, 776, 785, 793, 795, 811, 813). There was no evidence of abnormal behaviors or difficulties getting along with his treating providers during the period at issue.

The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant had *mild limitation*. He reported being able to pay attention for 15 minutes (Exhibit 4E). He also reported that he did not finish what he starts. He stated that he read every day and watched television most days. The claimant had generally logical thought processes (Exhibit 9F/708, 744, 776, 785, 793, 795, 811, 813). He had normal attention in September 2017 (Exhibit 3F/910).

> The fourth functional area is adapting or managing oneself. In this area, the claimant had *no limitation*. The claimant reported multiple panic attacks each week (Exhibit 4E). He also reported that he did ok with changes in routine. He stated that he was able to go out alone and drive. He also stated that he did not need reminders to take care of personal needs and grooming. There was no evidence of panic attacks during the period at issue.

(R. 15 (emphasis added).)

The ALJ explained that the limitations she identified were "not a residual functional capacity assessment" but were used just to "rate the severity of Plaintiff's mental impairments." (R. 15.) She further stated, "The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment," and said, "The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the [above] mental function analysis." (R. 15.)

The ALJ then proceeded to analyze Plaintiff's RFC, which she ultimately determined to include several physical limitations but *no* mental limitations. (R. 16-23.) The ALJ stated that she considered "all symptoms and the extent to which these symptoms [could] reasonably be expected as consistent with the objective medical evidence," as well as "the medical opinion(s) and prior administrative finding[s]." (R. 16.) Although she recognized at step 2 that Plaintiff had non-severe mental impairments, her RFC analysis was confined to Plaintiff's severe physical impairments. (R. 16-23.) It was devoid of: (1) any discussion related to Plaintiff's non-severe

mental impairment; and (2) either of the functional limitations the ALJ identified in step two of the sequential analysis. (*See* R. 15-23.)

## DISCUSSION

**I.    Legal Standard**

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law. *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018) (citing 42 U.S.C. § 405(g); *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018)). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." *Id.* (quoting *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)). The Supreme Court explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "[The] Court considers evidence that detracts from the Commissioner's decisions, as well as evidence that supports it." *Nash*, 907 F.3d at 1089 (quoting *Travis*, 477 F.3d at 1040). "If substantial evidence supports the Commissioner's conclusions, [the] Court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Id.* (quoting *Travis*, 477 F.3d at 1040). In other words, "if it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, [the Court] must affirm the decision." *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Cruz v. Chater*, 85

11

F.3d 1320, 1323 (8th Cir. 1996).

A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). The claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Barnhart, v. Walton*, 535 U.S. 212, 217-22 (2022); *see also*, *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993). Importantly, the ALJ must consider the combined effect of *all impairments*, regardless of any individual impairment's severity. 20 C.F.R. § 404.1523(c) (emphasis added).

"In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status." *Pyland v. Apfel*, 149 F.3d 873, 876-77 (8th Cir. 1998); *see also* 42 U.S.C. § 416(i)(3); 20 C.F.R. § 404.130; *Rasmussen v. Shalala,* 16 F.3d 1228 (8th Cir. 1994). A nondisabling condition, which later develops into a disabling condition after the expiration of a claimant's insured status, cannot be the basis for an award of disability benefits under Title II. *See Thomas v. Sullivan*, 928 F.2d 255, 260-61 (8th Cir. 1991). It is not enough that the impairments existed before the date a claimant's insured status expired; the impairments must have been disabling at that time. *See* 20 C.F.R. § 404.131(a). Evidence of a disability subsequent to the expiration of a claimant's insured status can be relevant, but only to the extent that it helps to elucidate a medical condition during the time for which benefits might be rewarded. *See Pyland*, 149 F.3d at 877 (citing *Fowler v. Bowen*, 866 F.2d 249, 252 (8th Cir. 1989)).

It is also the claimant's burden to prove his functional limitations related to his RFC. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)); *accord Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004). RFC is defined as the most a claimant can do despite his physical and mental limitations. 20 C.F.R. § 404.1545(a). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. *See* 20 C.F.R. § 404.1545(a)(3); *see also*, *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Roberts v. Apfel*, 222 F.3d, 466, 469 (8th Cir. 2000). With respect to vocational experts, "to constitute substantial evidence, a vocational expert's testimony must be based on a hypothetical that captures the concrete consequences of the claimant's deficiencies." *Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017) (quotation marks and citation omitted).

"Because a claimant's RFC is a medical question, an ALJ's assessment must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley*, 829 F.3d at 932 (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). The "ALJ is not limited to considering medical evidence, but is required to consider at least some supporting evidence from a [medical] professional." *Baldwin*, 349 F.3d at 556. The ALJ must determine the claimant's RFC based on all relevant medical and non-medical evidence. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016); 20 C.F.R. § 404.1545(a)(3). An ALJ's RFC determination is acceptable if it is supported by at least some medical evidence based on the ALJ's independent review of the record. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002).

The ALJ has the responsibility to "develop the record fairly and fully, independent of the claimant's burden to press his case." *Cox*, 495 F.3d at 618 (citation omitted). The records are

sufficient as long as they describe the claimant's "functional limitations with sufficient generalized clarity to allow for an understanding of how those limitations function in a work environment." *Id.* at 620 n.6. Remand is only required if the claimant "was prejudiced or treated unfairly by how the ALJ did or did not develop the record[.]" *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

**II.   Analysis**

Plaintiff argues the ALJ erred as a matter of law by failing to include Plaintiff's mild mental functional limitations in Plaintiff's RFC or explain their omission. (ECF Nos. 20 at 9-10; 26 at 1.) Plaintiff notes that despite the ALJ's identification of mild mental functional limitations at step two of the sequential analysis, the ALJ's RFC discussion does not include any reference to those limitations. (ECF No. 20 at 8-9.) Plaintiff argues this error resulted in the ALJ's inability to properly determine whether Plaintiff was actually capable of performing his past relevant work or other work that exists in the national economy, and in turn undermined her conclusion that Plaintiff was not disabled. (ECF Nos. 20 at 8-11; 26 at 1-6.) Plaintiff points out that the hypothetical questions the ALJ posed to Mr. Samlaska did not include: (1) Plaintiff's mild functional limitation related to concentrating, persisting, or maintaining pace with respect to his past relevant work; or (2) Plaintiff's mild functional limitation in interacting with others with respect to all work. (ECF No. 20 at 11-12.) Plaintiff contends that because the ALJ's hypothetical questions did not include the concrete consequences of all of Plaintiff's impairments, Mr. Samlaska's testimony related to Plaintiff's ability to perform past work or other jobs in the national economy does not constitute substantial evidence. (ECF No. 25 at 4.)

The Court agrees with Plaintiff. At step two of the sequential analysis, the ALJ determined Plaintiff had mild limitation in: (1) interacting with others; and (2) concentrating, persisting, or

maintaining pace. (R. 15.) While the ALJ stated that the limitations she identified did not constitute an RFC determination, and "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process require[d] a more detailed assessment" (R. 15), the ALJ did not actually offer such an assessment. Indeed, she provided no further analysis of these functional limitations at all, and failed to explain their omission. (*See* R. 16-23.)

Absent any analysis or explanation of how the ALJ assessed these limitations, the Court finds she failed to develop the record fairly and fully. *Cox*, 495 F.3d at 618 (citation omitted). Based on this record, the Court cannot review what, if any, consideration the ALJ gave to Plaintiff's mental limitations in determining his RFC. Had the ALJ felt no limitations were appropriate, she should have indicated this in her decision with sufficient explanation to allow for meaningful judicial review. The Court should not be left to "speculate on what basis the Commissioner … denied a claim." *Collins v. Astrue*, 648 F.3d 869, 872 (8th Cir. 2011). The Court's finding that the ALJ erred when she failed to incorporate Plaintiff's mild mental limitations into her RFC determination, or provide a reason for their omission, is compelled by the applicable regulations and case precedent. *See* 20 C.F.R. § 404.1523(c) (instructing that all impairments must be considered, regardless of severity); *see also, e.g., Vicky R. v. Saul*, Civ. No. 19-2530 (ADM/ECW), 2021 WL 536297, at *14 (D. Minn. 2021), *R. & R. adopted,* 2021 WL 533685 (D. Minn. Feb. 12, 2021) ("The mild mental limitations found by the ALJ should have been incorporated into the RFC determination or a reason provided for their omission."); *Martinette v. Acting Comm'r, Soc. Sec. Admin.*, Civ. No. 4:18-00533-RK, 2019 WL 2914098, at *2 (W.D. Mo. July 8, 2019) (citations omitted); *Clevenger v. Colvin*, Civ. No. 15-6087-SJ-DGK-SS, 2016 WL

3911982, at *2 (W.D. Mo. July 15, 2016) (reversing when ALJ failed either to include findings on social limitations in RFC determination or to explain their omission).

Moreover, the ALJ's failure to explain how she determined Plaintiff's RFC bears on the hypothetical questions she posed to the vocational expert. And because the ALJ's failure to provide a comprehensive RFC analysis bears on the hypothetical questions she asked Mr. Samlaska, it constitutes reversible error. *Vicky R.*, 2021 WL 536297, at *16. While a hypothetical question need only include the impairments and limitations that the ALJ finds are credibly and substantially supported by the record as a whole, *Scott*, 855 F.3d at 857, the ALJ in this case clearly recognized limitations she did not include in the hypothetical questions she posed to Mr. Samlaska. The ALJ posed one hypothetical question that potentially touched on Plaintiff's mild functional limitation related to concentrating, persisting, or maintaining pace with respect to unskilled work (R. 72-74, hypothetical person limited to carrying out simple, routine instructions), but the ALJ did not pose the question with respect to Plaintiff's past relevant work, or pose any hypothetical question to Mr. Samlaska that included Plaintiff's mild functional limitation in interacting with others. (R. 70-74.)

Because the hypothetical questions Mr. Samlaska considered did not include all of Plaintiff's limitations, it is unknown what impact those limitations may have had on Mr. Samlaska's testimony related to the work Plaintiff could or count not perform. While Defendant speculates the additional limitations would have had no effect on Mr. Samlaska's testimony (ECF No. 24 at 8-9), the Court does not engage in *post hoc* rationalizations to uphold an ALJ's decision. *See Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168-69 (1962) (asserting courts must not accept appellate counsel's *post hoc* rationalizations for agency action). As the record now stands, Mr. Samlaska's testimony related to the work Plaintiff could or could not perform

does not constitute substantial evidence and thus the ALJ's reliance on that testimony to support her conclusion that Plaintiff was not disabled is flawed. *Scott*, 855 F.3d at 857; *Vicky R.*, 2021 WL 536297, at *16.

For these reasons the Court recommends that the Decision be vacated and this case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) so the ALJ can complete the record. 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.") On remand the ALJ should: (1) either include Plaintiff's mild mental limitations in Plaintiff's RFC determination or provide a well-reasoned justification for their omission; and (2) recall a vocational expert for testimony to the extent necessary to address a new hypothetical based on any modified RFC.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Decision be vacated and this matter be remanded to the Commissioner for additional proceedings consistent with this Report and Recommendation.

## RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (ECF No. [18]) be **GRANTED**;
2. The Commissioner's Motion for Summary Judgment (ECF No. [23]) be **DENIED**;
3. The Decision be vacated;
4. This case be **REMANDED** to the Commissioner pursuant to sentence four of

42 U.S.C. § 405(g), for further administrative proceedings consistent with this Report and Recommendation; and

    4.    This case be **DISMISSED WITH PREJUDICE**.

Dated: May 22, 2023                   *s/ Dulce J. Foster*
                                                                 DULCE J. FOSTER
                                                                 United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).